James H. **COCHRAN**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education, and Welfare, Defendant.

No. 727.

United States District Court
S. D. West Virginia,
at Bluefield.

May 29, 1963.

Clay S. Crouse, Beckley, W. Va., and Merrell I. Budnick, Northfork, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability or to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that there is substantial evidence to support the Secretary's final decision and that defendant's motion for summary judgment should be granted.

Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), provides that "As part of its answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "The court shall have power to enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The next subsection 205(h) of the Act, 42 U.S.C.A. § 405(h), expressly restricts the judicial remedy to the aforesaid manner of judicial review.

On December 2, 1960, plaintiff filed an application for disability insurance benefits and to establish a period of disability, alleging that he became unable to work in September, 1959, at approximately age 40, because of ulcers, asthma, and osteomyelitis. This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On July 18, 1962, a hearing examiner found that plaintiff did not establish that he was under a statutory disability and denied his entitlement to the benefits sought. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on October 17, 1962.

In order to meet the statutory definition of disability, plaintiff had to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which began no later than March 1, 1961, to be entitled to disability insurance benefits, and on or before March 2, 1961, for entitlement to a period of disability. He will continue to meet the special earnings requirements until March 31, 1964.

Plaintiff testified at the hearing that when he was fourteen years old, he had pneumonia which left his legs and ankles swollen. This condition apparently was, or developed into, osteomyelitis. From that time until he was twenty-one years old, plaintiff did not attend school or work and was frequently in and out of hospitals because of the osteomyelitis. He testified that pieces of dead bone were removed from his lower legs. At age

twenty-one, plaintiff began working in a coal mine loading coal by hand. He further stated that at about the same time he fell from a railroad trestle at night and broke his lower neck in several places. As a result he had to wear a cervical brace for four or five months. Plaintiff asserted that he never had any special training in a trade or skilled occupation and that his entire work experience has been in the coal mines loading coal or driving a truck. Plaintiff's earning record, between ages 32 to 39, shows that he was credited with wages for each quarter of every year from 1951 to 1958. He asserts, however, that during this period he was frequently hospitalized for removal of bone in his legs or for correction of "draining" in his legs, which occurs every year or so. Plaintiff further testified that sometime in 1958 or 1959 he further injured his neck in a mine accident. This allegedly has made his neck stiffer, more painful, and practically immobile. Plaintiff asserted that in September, 1959, while working in a small mine operated by his brother-in-law, he "fell out," had to be taken to a hospital, and has not been able to work since. Plaintiff also stated that he has been offered lighter jobs in connection with mining such as cutting wooden wedges, but that he cannot do even that work because of severe stomach, leg, and hip pain, and asthma.

Plaintiff asserted that a year or two before September, 1959, the date of the alleged onset of his disability, he developed asthma and stomach ulcers. He further allegedly developed frequent, dry, wheezing coughing spells which aggravated his back and hip pains. His lower back, legs and hips began to bother and pain him increasingly although some pain had been present for many years because of osteomyelitis. He asserts that it became impossible for him to bend his back or neck without severe pain. When he drove the coal truck, plaintiff states that his ankles and legs would swell, and his feet would become shaky. At the time of the alleged onset of the disability, plaintiff states that after he had completed a truck run at the mine where he worked, he became so ill that he got out of the truck, fell to the ground, and vomited. He was taken to the hospital by his brother-in-law, who testified that he could give plaintiff a job in his mine at any time, but from his close observation and personal knowledge of plaintiff and his condition, he knew of no mine job that plaintiff could perform.

Plaintiff also testified that he sleeps poorly at night and has to prop himself up with pillows in order to get his breath. His testimony shows that he takes several aspirin daily, takes Maalox, an antiacid, for his stomach, as well as "ulcer pills" and "arthritis pills" daily when he can afford them. He asserts that his weight is below normal and that he is unable to eat most solid food because of subsequent vomiting, although he usually feels like eating. He does no chores around the house.

There is abundant medical evidence of record in this case. To discuss and summarize it report by report would unnecessarily extend this opinion and serve no useful purpose. However, for purposes of general background and to indicate the factual basis for this court's decision, the more pertinent portions will be broadly summarized. Suffice it to say at this juncture, that there is substantial evidence of record to support the Secretary's final decision.

The medical reports clearly support plaintiff's statements and assertions regarding his early osteomyelitis, neck fracture, and numerous periods of hospitalization beginning in 1935, when he was approximately 16 years of age. It is significant to note that plaintiff was last hospitalized for his osteomyelitis from July to August, 1951. He was allowed to return to work three months later. He was subsequently hospitalized for treatment of other difficulties such as prepatellar bursitis (February, 1952) following an injury at work; a tear of the medial menisous of the left knee as the result of a work accident (November, 1954); the same injury with arthrotomy, removal of cartilage, and

aspiration of the knee joint (January, 1955). Plaintiff was also hospitalized in March, 1956, for prepatellar bursitis, psoriasis of the skin and aspiration of the right knee. He returned to work a week after discharge.

In October, 1958, plaintiff was hospitalized for stomach and chest complaints. At that time, after the completion of tests, plaintiff's condition was diagnosed as duodenal ulcer and chronic bronchitis with obstructive emphysema. After treatment for these conditions he was checked one month later. At that time his gastro-intestinal symptoms were "much better" although he still had "much cough" and substernal ache with occasional shortness of breath.

In January, 1960, plaintiff was admitted to a hospital complaining of an onset of general malaise while at work, abdominal cramping, diarrhea, and chills. He was apparently acutely ill, but his symptoms improved rapidly with medication. He was discharged in two days and advised to continue his ulcer regimen.

In December, 1960, X-ray studies revealed minimal pleural thickening, but no significant changes in the heart, ribs, or diaphragm; no significant abnormalities in the bony pelvis; moderate bony lipping in the cervical spine with evidence of possible "minimal" fracture of the C–4 vertebra; moderate bone sclerosis in both tibias and fibulas; some atrophy of the soft tissue in that area; and some cortical thickening consistent with old osteomyelitis; but no dead bone was present and no draining sinuses or other evidence of present activity; and sacroiliac joints within normal limits. Subsequent X-rays establish that the osteomyelitis and the fracture of the vertebra in the neck are static and have not worsened.

Plaintiff was examined in March, 1961, for the West Virginia Department of Public Assistance. His complaints were ankle swelling and stomach trouble. His posture, gait, and general appearance were noted as good. The diagnoses were chronic asthmatic bronchitis, chronic

duodenal ulcer, psoriasis, and chronic "inactive osteo" of both tibias with post-inflammatory arthritis of both ankles.

In February, 1962, plaintiff's conditions, after examination, were described as old neck fracture, asthmatic bronchitis, psoriasis, possible peptic ulcer (from history), and old osteomyelitis of sacrum and tibia, bilaterally. Moderate deformity of the cervical spine was noted with all neck motions limited and painful, suggesting post-traumatic arthritis.

■ Other medical examinations made in March and April, 1962, are mostly cumulative of past reports and diagnoses. It should here be noted that these last two reports, as well as several of the others, contain statements by the examining physicians to the effect that plaintiff, because of a combination of his illnesses and work experience and intelligence, is unable to work or is totally disabled. These statements are not binding on the hearing examiner, the Appeals Council, or this court. They, however, must be considered together with all other evidence of record in arriving at a decision. This court has so considered them. One medical report (April, 1962) contains a statement by the examining physician that plaintiff is mentally retarded, and because of his worry over his inability to work and support is family, he has developed psychosomatic disease which has brought on gastritis, gastro-intestinal spasm, and neuro-dermatitis. This observation stands alone in the record and is unsupported by clinical or objective data.

Based on the medical reports it is quite clear that plaintiff has continued to gain weight, rather than to lose weight, despite his ulcer and other conditions between February, 1960 (weight, 143 pounds) and March, 1962 (weight, 155 pounds). There is also evidence that plaintiff uses a spray or atomizer to relieve his chest condition.

Based on all the evidence of record, both objective and subjective, it is manifest that plaintiff has osteomyelitis of both lower legs. The evidence is equally

clear that this condition has been inactive or healed for some time.

The evidence also establishes that plaintiff has suffered from duodenal ulcers and a chest condition, often referred to as asthmatic bronchitis, and a certain amount of arthritis in the cervical spine area. Apparently, from the evidence, the ulcer responds adequately to proper treatment. The asthmatic bronchitis also is apparently relieved by the use of a prescribed spray. The reports indicate that plaintiff probably has a duodenal ulcer and asthma or bronchitis, but these illnesses are not shown to have caused any significant impediment to plaintiff. The arthritis in the cervical spine is undoubtedly painful, but the hearing examiner might reasonably have found that such pain is not so severe as to render plaintiff disabled within the meaning of the Act. The same can reasonably be said about the pain resulting from a combination of the plaintiff's difficulties.

The trier of fact heard and observed the witnesses and weighed all conflicting evidence and conflicting inferences therefrom, and also determined the veracity of witnesses, especially the evidence of one witness who testified for plaintiff and whose evidence was questioned by the trier of fact.

There is substantial evidence to support the finding of the Secretary that plaintiff's impairments have not, singly or in combination, reduced his overall physical functions so much that he cannot engage in other types of substantial gainful activity consistent with his age, general intelligence, education, and background, even though he may not be able to perform his usual, physically demanding work as a coal miner or truck driver. There is also substantial evidence to support the final decision of the Secretary that plaintiff was not disabled within the meaning of the Act at any time during the effective period of the application of December 2, 1960. Defendant's motion for summary judgment is granted.

Plaintiff is insured for disability purposes up to March 31, 1964, and may file a further claim if his impairments worsen, or if they are now disabling, in his opinion.